724 F.2d 803
 38 UCC Rep.Serv. 509
 PHILIPPINE NATIONAL OIL COMPANY, Plaintiff-Counterdefendant-Appellant,
v.
The GARRETT CORPORATION, Defendant-Counterclaimant-Appellee.
The GARRETT CORPORATION, Counterclaimant-Appellant,
v.
PHILIPPINE NATIONAL OIL COMPANY, and Geronimo Z. Velasco,
Counterdefendants-Appellees.
 Nos. 82-5451, 82-5480.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 6, 1983.
Decided Jan. 24, 1984.
 
 Don A. Proudfoot, Jr., Los Angeles, Cal., for Philippine Nat. Oil Co.
 J. Michael Crowe, Ziskin, Rubenstein, Kaplan & Crowe, Los Angeles, Cal., for Garrett Corp.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN and TANG, Circuit Judges, and AGUILAR*, District Judge.
 GOODWIN, Circuit Judge.
 
 
 1
 The Philippine National Oil Company (PNOC) appeals from the district court's refusal to grant a new trial after the jury found for PNOC but failed to award damages. PNOC also asserts error in the jury instructions. Garrett cross-appeals from the district court's denial of its counterclaim, but asks us to consider its cross-appeal only if we grant PNOC some relief. We affirm with respect to PNOC, and thus do not reach Garrett's cross-appeal.
 
 FACTS:
 
 2
 Continental Telephone Company entered into a contract with Garrett, the appellee, under which Garrett would modify a JetStar airplane owned by Continental. The modification involved, among other things, replacing the plane's engines with new T731 engines. Continental subsequently sold the JetStar and its rights under the modification agreement to the Philippine government. At a later date, the Philippine government transferred the plane to appellant Philippine National Oil Company.
 
 
 3
 Garrett modified the airplane and PNOC took possession. A series of mishaps followed. The plane's fuel computers malfunctioned on several occasions and one of the engines repeatedly developed oil leaks. Garrett undertook to repair the engine on each occasion. However, PNOC complains that one repair was delayed by lack of suitable repair facilities in Singapore, where the plane was grounded, and that during another breakdown the plane was useless because Garrett would supply a loaner engine only if PNOC put up a substantial deposit, which PNOC refused to do. Eventually PNOC sold the airplane. One month later, Garrett finally solved the engine's persistent oil leak problem. Garrett contends that some of the airplane's problems were caused by PNOC's failure to maintain the craft properly and to stock adequate spare parts.
 
 
 4
 PNOC sued Garrett, alleging breach of warranty, fraud, negligent misrepresentation, negligence, and tortious breach of sales contract. Garrett counterclaimed, alleging that several press releases commissioned by PNOC which reported on the pending suit were libelous.
 
 
 5
 The district court granted summary judgment in Garrett's favor on the tortious breach of contract claim. The remainder of PNOC's claims went to trial before a jury, but Garrett's counterclaim was tried to the judge sitting without a jury. The jury found in favor of PNOC and against Garrett on the negligent misrepresentation counts, but awarded PNOC no damages. On the other counts, the jury found against PNOC and in favor of Garrett. The district judge ruled in PNOC's favor on Garrett's counterclaim. After its motion for a new trial was denied, PNOC appealed, and Garrett cross-appealed. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 DISCUSSION:
 
 6
 I. The "no damages" verdict in favor of PNOC.
 
 
 7
 A motion for a new trial is confided to the discretion of the district court, and its decision will be overturned on appeal only for abuse of discretion. Ruiz v. Hamburg-American Line, 478 F.2d 29 (9th Cir.1973).
 
 
 8
 The jury was asked to respond to both a general verdict and interrogatives. In response to the interrogatives, the jury stated that it found for PNOC on only the negligent misrepresentation cause of action, that it awarded PNOC no damages for that claim, and that it found against PNOC on all other causes of action. The jury then filled out a general verdict form stating that it found for PNOC and that it was awarding PNOC no damages.
 
 
 9
 PNOC argues that this no damages verdict shows that the jury was confused, failed to follow instructions, or engaged in an improper compromise. The jury was instructed that one of the elements of the tort of negligent misrepresentation consists of sustaining damage as a result of reliance on the truth of defendant's representations. Therefore, PNOC argues, the jury necessarily found that PNOC sustained damage when it found in favor of PNOC on the misrepresentation claim. Since the jury did not award it any damages, PNOC concludes that the jury was confused or that it improperly compromised.
 
 
 10
 We find PNOC's arguments unpersuasive. First, PNOC waived its claim of jury confusion or compromise when it failed to raise it at the time the verdict was read. Garrett supports its argument that PNOC waived its objection to the verdict by citing cases decided under Fed.R.Civ.P. 49(b), involving inconsistencies between responses to interrogatories and the general verdict. PNOC replies that it is not complaining of an inconsistency between responses to the interrogatories and the general verdict, so Garrett's cases are not in point.
 
 
 11
 We accept for the sake of argument PNOC's contention that the interrogatories are consistent with the general verdict. However, putting the interrogatories to one side, the waiver argument is still valid. What PNOC complains of is a jury verdict in its favor that fails to award damages. In Lyons v. Rainier Mfg. Co., Inc., 594 F.2d 1236 (9th Cir.1979), this court stated in dictum that a party that failed to object to a no damages verdict at the time it was read waived any future objections to the form of the verdict. In Lyons, counsel for the parties were not present when the questioned verdict was read. Because counsel had had no opportunity to object to the verdict, the case was remanded for a new trial. The court stated, however, that if counsel had been present at the reading of the verdict and failed to object, the right to future objections would have been waived. The dictum in Lyons is supported by holdings from other courts. Joseph v. Rowlen, 425 F.2d 1010 (7th Cir.1970); Fischer v. Howard, 201 Or. 426, 271 P.2d 1059, 1073 (1954); see Northern Pacific Railroad v. Urlin, 158 U.S. 271, 277, 15 S.Ct. 840, 842, 39 L.Ed. 977 (1895) (dictum). We hold that PNOC waived its right to object to the verdict by failing to object when the verdict was read.
 
 
 12
 Even if we did not find that PNOC had waived its right to object to the verdict, we would still uphold the verdict. Although state court cases are mixed, the federal rule is that failure to award damages does not by itself render a verdict invalid. Spears v. Hough, 458 F.2d 529 (8th Cir.), cert. denied, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972); Joseph v. Rowlen, supra; Wingerter v. Maryland Casualty Company, 313 F.2d 754 (5th Cir.1963); see Lyons v. Rainier Mfg., supra, (dictum). See also Annos. 49 A.L.R.2d 1328; 116 A.L.R. 828. In this case, the evidence about the damages that PNOC sustained from Garrett's misrepresentations was in conflict. The jury could have found that PNOC sustained no damage from any misrepresentations. The district court did not abuse its discretion in upholding the verdict.
 
 
 13
 II. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing.
 
 
 14
 PNOC abandoned its contentions on this point at oral argument, bowing to the authority of Consol. Data Term. v. Applied Digital Data Systems, 708 F.2d 385 (9th Cir.1983).
 
 
 15
 III. Jury Instructions on Limited Warranty.
 
 
 16
 PNOC claims that the trial court made several prejudicial errors in its instructions regarding Garrett's limited warranty on the JetStar. Some of the alleged errors concern the so-called "second step" portion of the warranty, which provided that
 
 
 17
 "(b) if [Garrett] is unable to repair or replace defective or nonconforming Articles or parts within a reasonable time after receipt thereof, Buyer [i.e., PNOC] shall be credited for their value at the original purchase price."
 
 
 18
 The trial judge's instructions to the jury on the second step portion of the warranty were[1]
 
 
 19
 "... The second step was that in the event that the first step could not be carried out, the Philippine National Oil Company would be paid the value of the defective article or part at its original price, and Garrett would get to keep the article or part."I now instruct you that the second step of the limited remedy involving a refund of the original purchase price is inapplicable to the present case because the second step procedures were never invoked by either party. Therefore, the jury should focus on the first step of the limited remedy, the repair and replacement clause."
 
 
 20
 PNOC contends that both these instructions were erroneous. First, it claims that there was no basis for the court's statement in instruction 33 that "Garrett would get to keep the article or part," although it does not clearly state how this language in the instruction, even if erroneous, prejudiced PNOC. Whether erroneous or not, PNOC waived any objection to this instruction, because it failed to object at trial to instruction 33. Jury instructions that are not objected to may not be assigned as error on appeal. Fed.R.Civ.P. 51; Rudick v. Prineville Memorial Hospital, 319 F.2d 764 (9th Cir.1963).
 
 
 21
 PNOC's next objection is to instruction 34, in which the court said that the "second step" procedure was inapplicable to this case because neither party invoked it. PNOC contends that the second step is not something to be invoked by PNOC; rather, it claims that the second step was to go into effect automatically if Garrett did not repair or replace a defective part within a reasonable time. PNOC argues that Garrett failed to repair or replace the defective engine within a reasonable time, and that PNOC thus is entitled, under the second step provision, to a refund of the purchase price of the engine. Garrett responds that PNOC's position at trial was that the second step provision had no place in this case at all.
 
 
 22
 At trial, PNOC stated in its objections to Garrett's proposed jury instructions that the second step provision "has no role in this case." At any rate, PNOC again failed to object properly to the instruction if it was not correct. PNOC's objection to instruction 34 did not claim that the second step procedure was in fact applicable; rather, it said only that the second step procedure was not applicable because Garrett, and not PNOC, failed to invoke it. Since PNOC did not object at trial that the second step procedure was applicable, it cannot raise the point on appeal.
 
 
 23
 PNOC's final contention regarding the trial court's warranty instructions concerns the instruction on failure of essential purpose. The California Commercial Code provides that if a limited warranty "fails of its essential purpose," the buyer is entitled to the full range of UCC remedies. Cal.Com.Code Sec. 2719(2).
 
 
 24
 PNOC objects to the trial court's instruction regarding failure of essential purpose. The trial court, in instruction 36, instructed the jury that the warranty failed of its essential purpose "if Philippine National Oil Company did not receive a fair quantum of remedy for any breach of warranty." PNOC argues that this instruction was too general, and that it was entitled to a more specific instruction tailored to the facts of the case since PNOC presented substantial evidence showing that Garrett had failed to repair or replace the engine within a reasonable time. PNOC contends that it was entitled to the following instruction, which it requested at trial:
 
 
 25
 "You may find that GARRETT's repair and replacement remedy failed of its essential purpose if you determine that after repeated attempts, GARRETT was not able to repair the JetStar's defects even if GARRETT's repeated repair attempts were diligent and made in good faith."
 
 
 26
 Again, PNOC does not present a winning argument. PNOC did object to instruction 36, but it objected only to the use of the word "quantum." Its objection read: "This instruction is confusing; the word 'amount' should be substituted for the word 'quantum' on the last line of this instruction." PNOC did not object that the instruction was too general or that it was entitled to an instruction tailored to the facts of this case.
 
 
 27
 Moreover, the instruction that PNOC requested does not accurately state the law. The requested instruction speaks only of failure to repair after "repeated repair attempts." However, the law is that a repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable time. Even the cases that PNOC cited at trial in support of its requested instruction state that there must be a failure to replace or repair within a reasonable time. PNOC's requested instruction makes no mention of failure within a reasonable time. One recent Ninth Circuit case does state that a limited repair remedy fails of its essential purpose if "warranted goods fail to perform ... despite the seller's efforts to repair...." Consol. Data Term. v. Applied Digital Data Systems, 708 F.2d at 392, without specifying that the failure to repair must be after a reasonable time has passed. But since this case does not speak to the reasonable time issue at all, we decline to read it as abolishing the reasonable time requirement.
 
 
 28
 Finally, in this case the evidence was that Garrett did repair the faulty engine. Therefore PNOC must argue that although the engine was repaired, this repair failed of its essential remedial purpose because it did not come within a reasonable time. PNOC's requested instruction did not do this.
 
 
 29
 The judgments are affirmed.
 
 
 
 *
 The Honorable Robert P. Aguilar, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 While the trial court's instructions are not numbered in the Reporter's Transcript, the parties in their briefs agree that the following two paragraphs of instructions are instructions 33 and 34