92 F.3d 1191
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ASSOCIATION OF CALIFORNIA WATER AGENCIES JOINT POWERS
INSURANCE AUTHORITY, a California corporation,
Plaintiff-Appellee/Cross-Appellant,
v.
TRANSCONTINENTAL INSURANCE, COMPANY, a New York corporation,
Defendant-Appellant/Cross-Appellee.
 Nos. 95-15038, 95-15120.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1996.
Decided Aug. 6, 1996.
 
 Before: REINHARDT, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Transcontinental Insurance Company ("Transcontinental") appeals from a decision denying its motions for judgment as a matter of law and new trial, and awarding damages for the breach of a covenant of good faith and fair dealing to the Association of California Water Agencies Joint Powers Insurance Authority ("ACWA JPIA"). ACWA JPIA alleged that Transcontinental failed to pay on ACWA JPIA's excess liability insurance policy following flooding in Kern County, California.
 
 
 3
 * Transcontinental contends that the jury's verdict for ACWA JPIA on the breach of contract claim was not supported by substantial evidence because the jury was improperly instructed on the "occurrence" issue and inappropriately found that the landowners' claims constituted one "occurrence."
 
 
 4
 A rule 50(b) motion for a judgment as a matter of law is a "threshold requirement" for a later motion for a JNOV. Lifshitz v. Walter Drake & Sons, Inc., 806 F.2d 1426, 1428 (9th Cir.1986). "If no motion for directed verdict has been made, a motion for judgment notwithstanding the verdict has no legal effect." Collins v. City of San Diego, 841 F.2d 337, 342 (9th Cir.1988); Transcontinental claims that under Cabrales v. County of Los Angeles, 864 F.2d 1454 (9th Cir.), vacated on other grounds, 490 U.S. 1087 (1989), reinstated, 886 F.2d 235 (9th Cir.1989), cert. denied, 494 U.S. 1091 (1990), we may nonetheless review the jury's verdict for plain error. Cabrales discussed the "only exception" to the rule that a party who has not made a rule 50(b) motion cannot question the sufficiency of the evidence on appeal:
 
 
 5
 Only where there is such plain error apparent on the face of the record that failure to review would result in a manifest miscarriage of justice should the appellate court analyze the evidence.
 
 
 6
 Id. at 1459 (citation omitted). The Cabrales court noted that this was an "extraordinarily deferential standard of review," under which an appellate court should not scrutinize the sufficiency of the evidence unless "there is an absolute absence of evidence to support the jury's verdict." Id.
 
 
 7
 Since there was testimony at trial as to the cause of all damage resulting from the repeated exposure to heavy rainstorms and their interaction with the canal, and deposition testimony of Transcontinental executives revealing that the company was uncertain as to the number of occurrences, there was not an "absolute absence of evidence" to support the jury's finding that there was a single occurrence. We therefore must affirm the finding and the verdict on the breach of contract claim.
 
 II
 
 8
 After unsuccessful attempts by the parties to reach a compromise regarding the waiver instruction, the district court delivered to the jury the following instruction on waiver, which was drafted principally by the court:
 
 
 9
 Waiver is the voluntary and intentional relinquishment of a known right. A waiver may occur: (1) by an insurer's intentional relinquishment of a known right; or, (2) by an insurer acting in such manner as to cause the insured reasonably to believe that the insurer had relinquished such right. Waiver may be express or implied. A waiver may be implied from an expression of intention, by speech or conduct not to demand a certain thing.
 
 
 10
 The burden on proving facts showing waiver rests on [ACWA JPIA].
 
 
 11
 Transcontinental contests the district court's waiver instruction for failing to include a requirement that the insured relied upon the insurer's conduct to its detriment, and for suggesting that an insurer can, by its conduct, impliedly waive a condition precedent (the "consent provisions of the insuring agreements and/or the "voluntary payments" provision). Because the case turns on whether Transcontinental waived its right to rely upon the policy terms and conditions as a defense, the wording of the instruction regarding waiver is critical.
 
 
 12
 California law recognizes a distinction between waiver and estoppel. "It is elementary and well settled that waiver and estoppel are two distinct and different doctrines.... [p] ... Waiver is a voluntary relinquishment, expressly or impliedly, of a known right and depends upon the intention of one party only." Morgan v. International Aviation Underwriters, Inc., (1967) 58 Cal.Rptr. 164, 166 (1967). Estoppel, on the other hand, "requires detrimental reliance or prejudice." Prudential-LMI Commercial Ins. Co. v. Superior Court, 274 Cal.Rptr. 387, 397 (1990).
 
 
 13
 In the insurance context, however, the distinction between waiver and estoppel has been blurred somewhat. Intel Corp. v. Hartford Accident & Indemnity Co., 952 F.2d 1551 (9th Cir.1991). "In cases where waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured." Id. California courts have also required the reliance element. In Insurance Co. of the West v. Haralambos Beverage Co., 241 Cal.Rptr. 427 (1987), the court stated:
 
 
 14
 There must be a showing that the insurer either intentionally relinquished a known right, or acted in such a matter as to cause the insured reasonably to believe the insurer had relinquished such right, and that the insured relied upon such conduct to his detriment.
 
 
 15
 Id. at 432-33. However, to the extent that California insurance common law has engrafted a detrimental reliance requirement onto the doctrine of waiver, it has done so only in the context of saying that, before an insured can use the doctrine of waiver to write in coverages not included in the written insurance policy, or to cross out exclusions which are present in the written insurance policy, the insured must show detrimental reliance or prejudice.
 
 
 16
 While such conditions unique to insurance contracts may require some element of misconduct by the insurer or detrimental reliance by the insured, conditions found in contracts generally, do not. This case involves the simple waiver of conditions of providing notice and information, which are not unique to insurance contracts. We see no reason to distinguish between such a waiver as it occurs in business contexts and insurance contexts, respectively. Accordingly, the district court's decision not to include a reliance element was appropriate.
 
 
 17
 Even if the court were required to give the instruction, there was ample evidence at trial from which the jury could find that ACWA JPIA had detrimentally relied on Transcontinental's silence following notice to Transcontinental's William G. Malone, by continuing to spend risk-pool funds to defend and settle claims in reliance on Transcontinental's apparent approval of the manner in which the claims were being handled.
 
 
 18
 We are not persuaded by Transcontinental's assertion that any overpayment was a result of the errors of ACWA JPIA's agent GAB, rather than any reliance by ACWA JPIA on Transcontinental. ACWA JPIA's letter to Transcontinental's parent (CNA), stating that GAB had erred by continuing to pay claims under the memorandum of coverage beyond the $500,000 self-insured layer, was sent to CNA five years after GAB gave notice of the claims to Transcontinental's Malone. A review of the record suggests that the normal course of dealing between the parties, with Malone's failure to object to the loss runs submitted, led ACWA JPIA and GAB reasonably to expect that Transcontinental would cover any excess expenditures involved.
 
 
 19
 We are equally unpersuaded by Transcontinental's contention that under Waller v. Truck Insurance Exchange, 44 Cal.Rptr.2d 370 (Cal.1995), a finding of waiver requires an intentional relinquishment of a right. This characterization is incomplete. Waller states that "California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." Id. at 388, ( quoting Intel, 952 F.2d at 1559). Here Transcontinental's silence and inaction upon receiving notice of ACWA JPIA's claims was so inconsistent with an intent to enforce the right to assert the insured's breach of condition in the insurance policy as to induce a reasonable belief that such right had been relinquished.
 
 
 20
 We conclude, therefore, that the jury instructions' reference to waiver by implication and failure to include a detrimental reliance requirement were not erroneous.
 
 III
 
 21
 Transcontinental asserts that the judgment awarding ACWA JPIA damages for breach of the covenant of good faith and fair dealing should be vacated because ACWA JPIA is a primary insurer who may only recover under contribution and because "bad faith" liability against Transcontinental is precluded by the fact that the company "reasonably withheld policy benefits."
 
 
 22
 Transcontinental has expended considerable energy over the course of this case arguing that ACWA JPIA was acting in the role of a primary insurer and therefore is owed no duty of good faith and fair dealing. This argument is without merit.
 
 
 23
 By statute the California Legislature has declared that "the pooling of self-insured claims or losses among entities as authorized in subdivision (a) of Section 990.4 shall not be considered insurance nor be subject to regulation under the Insurance Code." GovCode § 990.8(c) The California Supreme Court has declined to treat a self-insured as an "insurer." Commercial Union Assurance Co. v. Safeway Stores, Inc. 164 Cal.Rptr. 709 (1980). A primary insurer would have been scheduled as an underlying policy on Transcontinental's excess policy. It was not; ACWA JPIA is named as a Named Insured on the Transcontinental policy. That was intentional so that ACWA JPIA would have the protection of an "insured" status under Transcontinental's policy, and would have the benefit of the implied covenant of good faith and fair dealing operating in its favor.
 
 
 24
 Transcontinental contends that even if it incorrectly withheld policy benefits, the judgment awarding damages for breach of the covenant of good faith and fair dealing should be vacated because ACWA JPIA failed to establish the requisite element that "the reason for withholding benefits [was] unreasonable or without proper cause." Love v. Fire Ins. Exchange, 271 Cal.Rptr. 246, 255 (1990)). Citing to a California Supreme Court case, Transcontinental asserts that "[A]n erroneous interpretation of an insurance contract by an insurer does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been unreasonable." Brandt v. Superior Court, 210 Cal.Rptr. 211, 215 (1985) (internal quotations omitted.).
 
 
 25
 California courts have followed this court in holding that even in mistaken withholdings of policy benefits, "bad faith liability cannot be imposed where there 'exist[s] a genuine issue as to [the insurer's] liability under California law.' " Opsal v. United Services Auto. Assn., 10 Cal.Rptr.2d 352, 357 (1991), ( quoting Safeco Ins. Co. of America v. Guyton, 692 F.2d 551, 557 (9th Cir.1982). The Ninth Circuit frequently applies this principle to find a lack of bad faith as a matter of law. See, Lundsford v. American Guar. & Liab. Ins. Co., 18 F.3d 653, 656 (9th Cir.1994); Brinderson-Newberg Joint Venture v. Pacific Erectors, 971 F.2d 272, 282-283 (9th Cir.1992).
 
 
 26
 The mere denial of benefits does not establish "bad faith," especially where the denial is based on a genuine or debatable coverage issue concerning whether coverage should be afforded for the loss or the amount of damages claimed to have been sustained; or where the denial of benefits results from a reasonable and honest mistake. Hanson v. Prudential Ins. Co. of America, 783 F.2d 762, 766 (9th Cir.1985); Egan v. Mutual of Omaha Ins. Co., 169 Cal.Rptr 691, 695 (1979); Safeco Ins. Co. of America v. Guyton, 692 F.2d 551, 557, n. 7 (9th Cir.1982).
 
 
 27
 Transcontinental asserts that any errors it may have made with regard to the number of occurrences applicable to the underlying claims or the waiver matter, were close questions. The insurance company supports this assertion by citing the ACWA JPIA "bad faith" expert's finding of reasonable conduct by Transcontinental once the claims department was contacted directly. It also points to the district court's holding on cross-claims for summary judgment that ACWA JPIA had violated the condition precedent to coverage by failing to obtain Transcontinental's consent prior to making expenditures.
 
 
 28
 This argument is not without merit. An insurance company cannot be held liable for bad faith denial of a claim unless "the acts of the company in investigating the claim amount to an unreasonable denial to the insured of the benefits of the policy." Safeco Ins. Co. v. Karstone, 510 F.Supp. 856, 859 (C.D.Cal.1981). See Neil v. Farmers Exchange, 148 Cal.Rptr. 389 (Cal.1978). Reliance on the advice of counsel is a factor to be considered in determining whether an insurance company's denial is reasonable. State Farm Mut. Ins. Co. v. Superior Court, 279 Cal.Rptr. 116, 118 (Cal.App.1991). Once notice reached the claims department in Chicago, Transcontinental immediately consulted its attorneys, conducted the necessary investigations, and paid almost $2.0 million for the resolution of a number of claims against Arvin-Edison. Based upon these efforts, one could conclude that the company's conduct was reasonable.
 
 
 29
 On the other hand, Transcontinental's conduct leading up to April 1988 supports a claim for bad faith. ACWA JPIA first notified Malone of the possible need for excess funds in 1984. Malone testified that he had received notice, that he had sent it on to the Chicago office, and that he had spoken to those in Chicago about the claims in 1984 or 1985. Chicago claims manager Kunz stated that he "had no such recollection" of any such communications nor of much else, that he did not know why the company was claiming multiple occurrences, that he did not conduct any analysis with respect to the claims, nor direct anyone else to do so.
 
 
 30
 A review of the testimony of Transcontinental/CNA Claims Managers Kunz, Peacock, and Slewoski reveals why the jury returned its verdict finding bad faith. All three showed indifference toward the claim. Slewoski was responsible for the claim file and yet was unable to discuss the occurrence theory or financial prejudice incurred by the "late" notice. Peacock insisted that all notice of claims had to be sent to the Chicago office but was then unable to identify any part of the policy containing that requirement. He also indicated that after receiving an October 1987 memorandum advising him of the claims that CNA initiated no steps for six months. Kunz even conceded that the insurance company's decision not to pay ACWA JPIA's claim was not based on any particular provision in its insurance policy, nor on any interpretation of its insurance policy, but was done as a strategic maneuver to try to gain an edge in its litigation with ACWA JPIA.
 
 
 31
 We conclude that the record supports the jury's verdict of bad faith.
 
 IV
 
 32
 ACWA JPIA argues that it was fully entitled to sue Transcontinental for insurer bad faith and that it should have been permitted to recover, as damages, all of its attorneys' fees and costs incurred in the litigation below.
 
 
 33
 In Brandt, the California Supreme Court stated that a plaintiff is entitled to recover attorney's fees for a tortious breach of the covenant of good faith and fair dealing "incurred to obtain the policy benefits," but that this award "must not include attorney's fees incurred to recover any other portion of the verdict." 210 Cal.Rptr. at 215. Thus, fees incurred in prosecuting a bad faith action are not recoverable. United Services Auto. Ass'n v. Dalrymple, 283 Cal.Rptr. 330, 332 (Cal.App.1991) ( citing Brandt, 210 Cal.Rptr. at 212).
 
 
 34
 ACWA JPIA contends that in this case there was no such "other portion of the verdict" beyond "the amount due in the policy," and therefore, no requirement for apportionment under Brandt. Specifically, ACWA JPIA insists that the jury awarded policy benefits only, and then awarded the attorney's fees incurred by ACWA JPIA. Finally, ACWA JPIA contends that due to the "difficulty inherent in attempting to assign attorneys fees or costs to the development of one particular legal theory or another in a multi-cause of action complaint, apportionment should be reserved for cases in which an "other portion of the verdict" is rendered, "other than" insurance policy benefits.
 
 
 35
 This argument is unpersuasive. It is the pursuit of extracontractual damages which generates the fees in question--not the verdict. In addition, as Stockett testified, the jury's $469,264.00 award of attorneys fees to ACWA JPIA represented the total sum of attorney's fees incurred in this litigation, including fees and costs incurred in prosecuting the plaintiff's bad faith claim. Under Brandt, ACWA JPIA is precluded from recovering fees used in pursuit of the bad faith claim. Thus, the district court was correct to require an allocation of attorney's fees and costs to determine which fees and costs were attributable to the breach of contract action.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3