**Josefina CABRALES, et al., Plaintiffs–Appellees,**

v.

**COUNTY OF LOS ANGELES; Ronald Black, Defendants–Appellants.**

**Josefina CABRALES, Plaintiff–Appellee, Cross–Appellant,**

v.

**COUNTY OF LOS ANGELES; Ronald Black, Defendants–Appellants, Cross–Appellees.**

**Nos. 87–6061, 87–6306 and 87–6371.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1988.

Decided Dec. 28, 1988.

Kevin C. Brazile, Deputy County Counsel, County of Los Angeles, Cal., for defendants-appellants.

Stephen Yagman and Marion Yagman, Yagman & Yagman, P.C., Los Angeles, Cal., for plaintiff-appellee Josefina Cabrales.

Before FARRIS and WIGGINS, Circuit Judges, and CROCKER,[*] District Judge.

WIGGINS, Circuit Judge:

Defendants-appellants County of Los Angeles and Ronald Black appeal from summary judgment and denial of their motion for a judgment notwithstanding the verdict (JNOV). Josefina Cabrales, the mother of Sergio Alvarez Cabrales (decedent), brought suit under 42 U.S.C. § 1983 for the death of her son while he was a pretrial detainee in Los Angeles County jail under the command of appellant Ronald Black. The plaintiff claimed that the County and its employees at the jail were deliberately indifferent to her son's medical needs and they were liable in damages for his suicide. The County and Black filed a motion for summary judgment. It was denied. The

[*] Hon. M.D. Crocker, United States District Judge for the Eastern District of California, sitting by designation.

case went to jury trial and a verdict was returned for the plaintiff. The court entered judgment on the verdict in the amount of $150,000 against the County and $7,500 against Black. The appellants moved for a JNOV. It too was denied.

The plaintiff/cross-appellant appeals from an award of attorneys' fees in the case. After the verdict, the plaintiff moved for an award of attorneys' fees pursuant to 42 U.S.C. § 1988. The trial court determined the "lodestar" amount to be $200,500, but reduced that figure by 25% to $152,284.75 because of the limited success of the plaintiff in her suit. The court also declined to award $33,000 in expert witness fees to the plaintiff. We AFFIRM.

## FACTS

The facts are generally not in dispute. On October 27, 1983, the decedent was incarcerated in the Los Angeles County Men's Central Jail on a burglary charge. Several days later he fainted and was briefly examined by a doctor. The doctor transferred the decedent to the jail medical clinic where he apparently became "assaultive and combative." He was put in restraints for his and others' protection. Several days later he was released from his restraints and transferred to another part of the clinic after he was examined by a psychiatrist. He subsequently was released back into the general population and spent some time at the Wayside Honor Ranch jail facility.

On December 12, 1983, he was transferred back to the Men's Central Jail where he was again examined by a psychiatrist. The psychiatrist concluded that decedent had a "schizotypal personality" and noted that the decedent complained of family and legal problems. The decedent, however, denied any suicidal desires or tendencies. The decedent was then placed in a "behavior observation module" for jail inmates considered to be mentally disturbed. Inmates in the module were visually checked every half hour. On December 16, while in this module, the defendant attempted to commit suicide. Two deputies caught him about to leap from the top of the cell bars

with blanket strips tied around his neck. The decedent was subsequently examined by a psychiatrist who determined that the suicide attempt was simply a "gesture" undertaken to get out of the behavior observation module and back into the general population.

Two days later, the decedent was released back into the general population after a doctor concluded that he was not a danger to himself or others. On December 24, 1983, while in the general population, the decedent was involved in a fight with other inmates where another inmate was stabbed. On December 26, a hearing was held on the question whether the decedent was involved in the fight. The hearing officer found that the decedent was involved and "sentenced" him to ten days in the "disciplinary isolation module." Inmates incarcerated in the module were denied contact with other prisoners and placed on a restricted diet. On January 3, 1984, the decedent was found dead, hanging from a towel rack in his cell by an ace bandage around his neck.

On October 18, 1984, the plaintiff filed this 42 U.S.C. § 1983 action. The gist of the plaintiff's action was that the County and its jail employees had demonstrated "deliberate indifference" to the decedent's serious medical and psychiatric needs. The plaintiff alleged that the County had a policy or custom that resulted in serious understaffing of psychiatric personnel at the facility. The plaintiff alleged that the understaffing deprived the decedent of adequate psychiatric care because psychiatrists had too little time to analyze and treat inmates' psychological problems. Also, she alleged that the County demonstrated deliberate indifference to the plaintiff's psychiatric needs by putting him in disciplinary isolation after his first suicide attempt was allegedly caused by isolation from the general jail population. On May 29, 1986, the defendant filed a motion for summary judgment. The court granted the motion as to one defendant, Dr. Vargas, the jail psychiatrist, finding that the plaintiff's action against him was barred by the statute of limitations. *Cabrales v. County of Los*

*Angeles*, 644 F.Supp. 1352, 1356–57 (C.D. Cal.1986). The court denied the motion as to all the other defendants. It found that there were general issues of material fact whether the decedent had received adequate medical and psychiatric care. The court also found a genuine issue of material fact as to whether the decedent had received due process and whether the County had a policy or custom of denying due process in this context. *Id.* at 1360.

On March 27, 1987, jury trial commenced. At the close of the plaintiff's evidence, the defendants moved for a directed verdict. The court did not immediately rule on the motion, but before the close of the defendants' evidence, the court denied the motion. The defendants did not make a motion for directed verdict at the close of all the evidence. Judgment on the jury verdict for the plaintiff was entered on April 16, 1987. On April 20, 1987, the County and Black, the only defendants left in the case, filed a motion for a JNOV. In considering the defendants' motion, the court found that it had ruled on the defendants' motion for a directed verdict made at the close of the plaintiff's evidence *before* the close of the defendants' case. It found that the defendants had failed to make a motion for a directed verdict at the close of all the evidence, that the court never "reconsidered" its earlier denial at the close of all the evidence, and the defendants had not asked for a jury instruction directing the jury to return a verdict for the defendants. Because the defendants failed to make a motion for a directed verdict at the close of all the evidence, the court found that "the motion for a JNOV is not properly before this court, and the court denies and strikes the motion." In addition, the court found the motion to be without merit. The appellants timely appeal.

On May 14, 1987, the plaintiff filed a motion for attorneys' fees under 42 U.S.C. § 1988. On July 30, 1987, the trial court awarded $152,284.75 in attorneys' fees. The court determined the "lodestar" figure to be $200,500 based on the number of hours devoted to the case multiplied by a reasonable hourly fee. The court reduced the figure by 25%, reflecting the limited success of the plaintiff's suit. The court noted the plaintiff had originally brought claims against twenty or more individual sheriff's deputies who worked at the jail, and that the plaintiff ultimately succeeded only on her claim that the County, through its policymaker Black, maintained a policy or custom of deliberate indifference to the safety and medical needs of inmates like the decedent. The court determined that the plaintiff's success would have been significantly enhanced if she had prevailed on her claims against the deputies. The court also denied the plaintiff's application for $33,000 in fees for the work of experts used in the case. The court found that the plaintiff had failed to provide adequate documentation for these fees. "The court has no way to assess the reasonableness of the expenditures and declines, in its discretion, to award any of them." The plaintiff/cross-appellant timely appeals. We have jurisdiction over both appeals under 28 U.S.C. § 1291.

## ANALYSIS

### I. JNOV.

Fed.R.Civ.P. 50(b) provides in part:

Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict ... set aside....

In considering the appellants' motion for a JNOV, the trial court found, as a matter of fact, that the defendants had not made a motion for a directed verdict at the close of all the evidence. It also found that it had not reconsidered its earlier denial of the appellants' motion for a directed verdict made at the close of the plaintiff's case. A district court's findings of fact are reviewed under the clearly erroneous standard. *LaDuke v. Nelson*, 762 F.2d 1318, 1321 (9th Cir.1985), *modified*, 796 F.2d 309 (9th Cir.1986); Fed.R.Civ.P. 52(a). Under the clearly erroneous standard of review, an appellate court must accept the lower court's findings of fact unless upon review the court is left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gyp-*

*sum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.,* 774 F.2d 1371, 1374 (9th Cir.1985).

■ The Ninth Circuit "observe[s] strictly the threshold requirement for a JNOV that a motion for a directed verdict must be made at the close of all the evidence." *Lifshitz v. Walter Drake & Sons, Inc.,* 806 F.2d 1426, 1428 (9th Cir.1986); *see also Johnson v. Armored Transp. of Cal., Inc.,* 813 F.2d 1041, 1043 (9th Cir.1987). The purposes behind the requirement for a motion for a directed verdict at the close of all the evidence are twofold. The first purpose is to preserve the sufficiency of the evidence as a matter of law. A motion for a JNOV will then allow the district court to reexamine its first decision not to direct a verdict. The second purpose is to call attention to the claimed deficiency in the evidence. *Lifshitz,* 806 F.2d at 1428–29. There are only two exceptions to these requirements. First, where the district court has taken a motion for a directed verdict made at the close of the plaintiff's evidence under advisement and reserves ruling on it until the close of all the evidence, the first motion is considered to still be in effect. Second, where an ambiguous or inartful request for a directed verdict is made that adequately puts the issue of the sufficiency of the evidence before the trial court, the court may still consider a motion for a JNOV. *Herrington v. County of Sonoma,* 834 F.2d 1488, 1500 (9th Cir. 1988). In the present case, the defendants failed to make a motion for a directed verdict at the close of all the evidence. There was no showing that either of the two exceptions were present. The trial court properly denied the appellants' motion for a JNOV.

■ By failing to make a motion for a directed verdict at the close of all of the evidence, "a party cannot question the sufficiency of the evidence either before the district court ... *or on appeal." Farley Transp. Co. v. Santa Fe Trail Transp. Co.,* 786 F.2d 1342, 1345 (9th Cir.1986) (quoting *Myers v. Norfolk Livestock Market, Inc.,* 696 F.2d 555, 558 (8th Cir.1982) (emphasis added)); *see also Herrington,* 834 F.2d at 1500. On appeal, the appellants raise many sufficiency of the evidence arguments. We hold that these arguments are waived by the appellants' failure properly to preserve the legal issue of the sufficiency of the evidence.

■ The only exception to this rule is the plain error doctrine. Only where there is such plain error apparent on the face of the record that failure to review would result in a manifest miscarriage of justice should the appellate court analyze the evidence. *Williams v. Hughes Helicopters, Inc.,* 806 F.2d 1387, 1392 (9th Cir.1986). This extraordinarily deferential standard of review addresses whether there is an absolute absence of evidence to support the jury's verdict. *Herrington,* 834 F.2d at 1500. In the case at bar, the evidence was sufficient both for the jury and later for the court to find that the appellants were deliberately indifferent to the medical and psychological needs of the decedent. The evidence meets the requirements of the plain error doctrine.[1]

II. *Summary Judgment.*

The appellants argue that their motion for summary judgment should have been granted. They contend that the plaintiff did not raise a genuine issue of material fact that the County had a policy or custom of deliberate indifference to pretrial detainees' medical and psychological needs.

---

1. Fed.R.App.P. 4(a)(4), *inter alia,* provides that if a timely motion for a JNOV is made, the time for notice of appeal begins to run from the date of the grant or denial of the motion. The appellee argues that since the motion for a JNOV was not properly before the trial court and was stricken the tolling provision of 4(a)(4) is not applicable and the appellants' appeal is untimely. The appellee moved to have the appellants' appeal dismissed on this ground. On Septem-

ber 2, 1987, a motions panel of this court correctly rejected this argument. Rule 4(a)(4) straightforwardly states that the filing of a motion for JNOV "stops the clock" on the 30–day notice of appeal requirement. The rule does not toll the 30–day period only when a motion for a JNOV was procedurally correct. Rather, if such a motion is filed, the tolling provisions of the rule apply.

Also, that no genuine issue was raised that any County policy or custom was the proximate cause of the decedent's suicide. The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court properly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

### A. *Affidavits*

■ The appellants challenge the affidavits submitted by the appellee to oppose their motion for summary judgment. They argue that the affidavits made by the plaintiff's experts were not based on specific facts or on personal knowledge and are therefore hearsay. Evidentiary decisions are reviewed for an abuse of discretion and should not be reversed absent some prejudice. *Kisor v. Johns–Manville Corp.,* 783 F.2d 1337, 1340 (9th Cir.1986). A trial court has broad discretion in admitting and excluding expert testimony and its decision will be sustained unless it is manifestly erroneous. *Taylor v. Burlington N. R.R. Co.,* 787 F.2d 1309, 1315 (9th Cir.1986). The appellants' contention is without merit.

The affidavits at issue were made by a California medical doctor, board-certified in psychiatry, and a PhD. in criminal justice who taught that subject at American University in Washington, D.C. The affidavits were identical and stated that the expert had apprised himself of the facts in the case in forming his opinion. The affidavits went on to state that the decedent had received inadequate psychological care while in the jail. They stated that putting the decedent in disciplinary isolation contributed to his suicide. They analyzed the psychological and medical staffing at the jail and concluded that the facility was seriously understaffed. They found the understaffing to constitute a deliberate decision or policy on the part of the appellants that constituted deliberate indifference to the decedent. They noted that some 1500–1600 detainees a month showed some need for psychiatric attention and the understaffing would allow a psychiatrist to spend approximately 12 minutes a month with a person in need of psychiatric attention. They also stated that the "treatment" afforded to the decedent was inadequate. Thus, the affidavits were based on specific facts and pointed to policies or customs on the part of the appellants that contributed to the decedent's suicide.

The appellants' contention that the affidavits were not based on personal knowledge and are hearsay is irrelevant. Under Fed.R.Evid. 703, the "facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Therefore, these experts need not have obtained their knowledge of conditions of the jail on a first-hand basis. The court did not abuse its discretion in relying on these affidavits in denying the appellants' motion for summary judgment.

### B. *Municipal Liability*

A municipality or governmental entity cannot be found liable under section 1983 on a *respondeat superior* theory. Rather, such liability can be imposed only for injuries inflicted pursuant to a governmental "policy or custom." *Monell v. Dept. of Social Servs. of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). In addition, there must be shown to be an affirmative link between the policy or custom and the particular constitutional violation alleged. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). The alleged policy or custom must be the "moving force" of the constitutional violations in order to establish liability under section 1983. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (citing *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037). Though proof of a single incident is insufficient to establish a custom or policy, *Tuttle,* 471 U.S. at 821, 105 S.Ct. at 2435, liability may be predicated on one violation if it can be shown that the

violation was a product of an unconstitutional policy or custom, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986).

 Such a policy may be shown by demonstrating that the County and its administrative organ, the Men's Central Jail (run by appellant Black), manifested a "deliberate indifference" to the medical needs of the inmates at the jail. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).[2] Prison or jail officials "show deliberate indifference to serious medical needs if prisoners are unable to make their medical needs known to the medical staff. Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir.1982) (citation omitted).

 On appeal, the appellants make several related arguments. First they claim that no policymaker, Black included, established or adopted a policy of deliberate indifference to the decedent's needs. This contention misses the point. The appellants seem to argue that only *affirmative* acts constitute a policy or custom for section 1983 purposes, and no policy-maker "affirmatively" adopted a policy of deliberate indifference. Such is not the case. The very notion of deliberate "indifference" connotes a regime where neglect of detainees' medical and psychological needs proves a constitutional violation. Also, acts of omission, as well as commission, may constitute the predicate for a finding of liability under section 1983. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ("In order to state a cognizable [1983] claim, a prisoner must allege acts or *omissions* sufficiently harmful to evidence deliberate indifference to serious medical needs." (emphasis added)); *Roberts*, 773 F.2d at 725.

 The appellants also argue that there was no showing of a policy of deliberate indifference to the decedent's medical and psychiatric needs because he was not denied *access* to medical and psychiatric help. They point to the uncontested evidence in the record that the decedent was evaluated on several occasions by various medical personnel. The appellants' contention is without merit. As *Hoptowit* noted, access to medical staff is meaningless unless that staff is competent and can render competent care. *Hoptowit*, 682 F.2d at 1253. The affidavits relied on by the district court adequately demonstrated that the medical understaffing at the jail directly contributed to the decedent's suicide. The psychiatric staff could only spend minutes per month with disturbed inmates. The district court could conclude that lack of time and resources meant, in the decedent's case, that any psychological illness he had would go undiagnosed and untreated. The omission by the County and its policymakers in providing adequate medical care at the Men's Central Jail was the policy or custom that was the "moving force" behind the deprivation of the decedent's constitutional rights without due process. The trial court properly denied the appellants' motion for summary judgment.

### III. *Jury Instruction.*

 The appellants contend that the jury verdict should be reversed because the court gave an improper jury instruction.[3]

---

**2.** *Estelle* was an eighth amendment prison case. The fourteenth amendment due process clause applies to pretrial detainee cases and not the eighth amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). However, the fourteenth amendment due process rights of pretrial detainees are analogized to those of prisoners under the eighth amendment. *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985). "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions

amount to punishment of the detainee." *Bell*, 441 U.S. at 535, 99 S.Ct. at 1872.

**3.** The pertinent jury instruction stated:
The prohibition against cruel and unusual punishment is not limited to specific acts directed at selected individuals, but is equally pertinent to general conditions of confinement that may prevail at a jail. The totality of what jail personnel do or fail to do with respect to an inmate pursuant to the custom, practice or policy of the county may constitute deliberate indifference on the part of the county.

The trial court has broad discretion in formulating instructions and will be reversed only upon a showing of an abuse of discretion. *United States v. Wellington*, 754 F.2d 1457, 1463 (9th Cir.), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). The appellants argue that the instruction allowed the jury to impose liability on the County and Black for the "totality of conditions" at the jail. They note that the Ninth Circuit has rejected such a standard of liability. *Hoptowit*, 682 F.2d at 1246–47; *Wright v. Rushen*, 642 F.2d 1129, 1132–33 (9th Cir.1981). The appellants' claim is without merit.

The appellants are correct to claim that *Hoptowit* and *Wright* disapprove of a "general conditions" standard of liability:

Courts may not find Eighth Amendment violations based on the "totality of conditions" at a prison ... There is no Eighth Amendment violation if each of these basic needs is separately met. If the challenged condition does not deprive inmates of one of the basic Eighth Amendment requirements, it is immune from Eighth Amendment attack. A number of conditions, each of which satisfy Eighth Amendment requirements, cannot in combination amount to an Eighth Amendment violation.

*Hoptowit*, 682 F.2d at 1246–47 (citation and footnote omitted). However, the instruction at issue does not predicate liability on the general conditions at the jail. Rather, it states that as to the claim of "deliberate indifference" to the decedent's medical needs, that fact may be shown by the *totality* of what employees at the jail did or did not do. The instruction does not address *all* conditions of the facility; rather, it directs the jury to assess whether there was a policy of deliberate indifference. The

instruction follows *Hoptowit* in this respect because it focuses on one of the "basic needs" of inmates at the jail. Thus, within the context of one of the "basic needs" protected by the Eighth Amendment, the "combined acts or omissions" of jail employees are pertinent to whether the decedent was deprived of his life and liberty without due process of law. The trial court did not abuse its discretion in giving this instruction.

### IV. *Statute of Limitations.*

The plaintiff first filed her complaint on October 18, 1984. On August 8, 1986, she filed her eighth amended complaint.[4] This was the first time that she had named appellant Black as a defendant. Appellant Black moved for summary judgment claiming that the plaintiff's cause of action against him was barred by the statute of limitations. He renews that claim on appeal.[5] A ruling on the appropriate statute of limitations is a question of law reviewed de novo. *In re Swine Flu Prods. Liab. Litig.*, 764 F.2d 637, 638 (9th Cir. 1985).

As noted, the appellee filed suit in 1984. In 1985, the Supreme Court decided *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In *Wilson*, the Court addressed the issue of statute of limitations for section 1983 suits. Because section 1983 does not contain a statute of limitations, the practice has been to look to state law for the appropriate limitations period. In *Wilson*, the Court decided that the appropriate state statute of limitations is that for personal injury actions. *Id.* at 280, 105 S.Ct. at 1949. In California, the personal injury statute of limitations is one year. Cal.Civ.Proc.Code § 340(3). Thus,

---

Even if the acts or omissions of no single employee constitute deliberate indifference to the serious medical needs or safety of an inmate, the combined acts or omissions of several employees acting pursuant to governmental practice, policy or custom may constitute deliberate indifference to the inmate's serious medical needs or safety.

**4.** The trial court allowed the plaintiff to amend her complaint up until the time of trial because of discovery abuses on the part of the County.

**5.** The appellee argues that the statute of limitations issue was not raised in the pretrial order and, therefore, is not preserved for appeal. This contention is incorrect. The appellants appeal the denial of summary judgment where this issue was addressed. Thus, all issues raised in that interlocutory decision are properly before this court.

under *Wilson,* because the plaintiff's cause of action arose on January 3, 1984, the date of her son's death, her cause of action against Black would be time-barred in that he was first made a defendant some two-and-one-half years later.[6] However, the lower court held that, under California law, the naming of Black "related back" to the plaintiff's non-time-barred original complaint. *Cabrales,* 644 F.Supp. at 1360.

The district court noted that Fed.R.Civ.P. 15(c) addresses the issue of relation back of amendments to complaints.[7] The court determined that if 15(c) applied to this case the naming of Black would probably not relate back because there had been no showing that he was on notice of the complaint as required by 15(c). *Id.* at 1358. The court, however, held that 15(c) did not apply because "the state statute of limitations controls the question of whether the individual defendants were timely named ... and under the California statute of limitations, plaintiff had a substantive right to name these defendants, the Court holds that the defendants were in fact timely named." *Id.* (footnote omitted). Under California relation back rules, there is no notice-to-defendants requirement as in the federal rule.[8] In reaching this conclusion, the court relied on *Lindley v. General Elec. Co.,* 780 F.2d 797 (9th Cir.), *cert. denied sub nom. Stone & Webster Eng'r*

*Corp. v. Lindley,* 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986).

In *Lindley,* the plaintiffs named Does in their complaint that was first filed in state court. Based on diversity, the defendant removed the case to federal court where the plaintiff attempted to name real people to replace the Does. Under California law, such a substitution is allowed for up to three years from the commencement of the action. Cal.Civ.Proc. Code §§ 474, 581(a) (West 1988); *see Munoz v. Purdy,* 91 Cal. App.3d 942, 946, 154 Cal.Rptr. 472, 474 (1979). *Lindley* held that such a substitution was proper even though it violated Rule 15(c). We found that the limited purpose of 15(c) was "to provide a uniform solution to statute of limitations problems when amendments are sought *after* the limitation period has expired; [the rule] was not designed to determine the *length* of the limitations period to be applied." *Lindley,* 780 F.2d at 800 (quoting *Rumberg v. Weber Aircraft Corp.,* 424 F.Supp. 294, 301 (C.D.Cal.1976) (emphasis in original)). The court found that the California relation back rule did not directly conflict with 15(c) because 15(c) does not determine the timeliness of causes of action. *Id.* at 801. The district court properly found that *Lindley* applies to the case at bar. As the *Wilson* Court stated, "the length of the limitations period, and closely related questions of *tolling and application,* are to be gov-

---

**6.** *Wilson* was decided *after* the plaintiff first filed her cause of action. The issue of the retroactivity of *Wilson* was addressed by this court in *Usher v. City of Los Angeles,* 828 F.2d 556 (9th Cir.1987). In *Usher,* the court held that for section 1983 suits "in California, the applicable statute of limitations is either three years [the pre-*Wilson* statute of limitations for section 1983 actions in California] from the time the cause of action arises or one year from *Wilson,* depending on which period expires first." *Id.* at 561. In this case, the former period would be January 3, 1987. *Wilson* was decided on April 17, 1985. Thus, the latter period would be April 17, 1986. Under *Usher,* the shorter of the two periods applies. Therefore, the latter period would apply and the plaintiff's complaint against Black would be approximately four months late.

**7.** Rule 15(c) (Relation Back of Amendments) provides:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct,

transaction, or occurrence set forth ... in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if ... that party (1) has received such notice of the institution of the action ... and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

**8.** Cal.Civ.Proc.Code § 474 (Defendant designated by fictitious name; amendment) provides:
When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint ... and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly....

erned by state law." *Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943 (emphasis added) (footnote omitted). The California relation back doctrine is such a tolling issue that, under *Wilson,* must be decided under state law. Also, as the district court noted, statutes of limitation define the substantive rights of parties. The California pleading practice allowing new defendants to be named after the original complaint is filed without violating the statute of limitations is such a substantive state policy that is applicable in the federal courts. *Guaranty Trust Co. v. York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); *see also Lindley,* 780 F.2d at 802 (citing *Guaranty Trust* ). The district court properly found that the plaintiff's cause of action against Black was not barred by the statute of limitations.

## V. *Attorney and Expert Witness Fees.*

### A. *Attorneys' Fees*

In a civil rights action or proceeding, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1982). We review the district court's assessment of attorneys' fees, in this case $152,284.75 representing a 25% reduction for plaintiff's limited success, for an abuse of discretion. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Jordan v. Multnomah County,* 815 F.2d 1258, 1261 (9th Cir.1987). The appellee/cross-appellant contends that the district court abused its discretion by reducing the "lodestar" figure by 25%. The appellants/cross-appellees, on the other hand, contend that the district court abused its discretion by failing to reduce the lodestar figure by an additional 25%. We reject both contentions, and hold that the trial court did not abuse its discretion by award-ing plaintiff $152,284.75 for her attorneys' fees.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. This "presumptively reasonable fee," known as the lodestar figure, may then in "rare" and "exceptional" cases be "adjusted" on the basis of "other considerations." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 3098–99, 92 L.Ed.2d 439 (1985) (quoting in part *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). In *Hensley,* the Supreme Court noted that, while these "other considerations" included factors previously used in assessing the overall reasonableness of fees, *see Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974); *accord Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976),[9] many of these same factors are now "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," 461 U.S. at 434 n. 9, 103 S.Ct. 1940 n. 9. It is now clear that among these factors that "cannot serve as independent bases for adjusting fee awards are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained." *Jordan,* 815 F.2d at 1262 n. 6 (citing *Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1548–1549). Presumably each of these factors are taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation. We note, however, that the district court here "adjusted" the lodestar calculation of $200,500 down-

---

**9.** These factors included:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr,* 526 F.2d at 70.

ward by 25% to account for the "results obtained."

■ Only recently this court reversed a downward adjustment of a lodestar figure because in that case the district court had accounted for lack of success twice—once in calculating the lodestar itself and again in assessing a downward adjustment. *See Cunningham v. County of Los Angeles*, 859 F.2d 705, 712 (9th Cir.1988). Here, by contrast, the district court made only one reduction for lack of success, albeit incorrectly as an adjustment to the lodestar. Mathematically, it is inconsequential whether the lodestar figure itself is adjusted for lack of success or whether the reasonable hours component of the lodestar is adjusted for lack of success.[10] What matters is that the district court did not "count" for lack of success twice. We therefore hold that the district court's reduction of the lodestar, if warranted, constitutes a "harmless error."

This brings us to the parties' main contention: Did the district court abuse its discretion in determining that a 25% reduction for lack of success was warranted under the circumstances? In cases in which a plaintiff's success is limited, we have instructed the district court to apply a two-part analysis:

First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive.

*Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir.1986) (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940); *see also Greater Los Angeles Council on Deafness v. Community Television of S. Cal.*, 813 F.2d 217, 222 (9th Cir.1987) ("Supreme Court offers two different approaches for setting reasonable fees where a plaintiff's success is limited").

■ Although the "test for relatedness of claims is not precise," *Thorne*, 802 F.2d at 1141, it is clear that related claims "involve a common core of facts" or are "based on related legal theories," *Hensley*,

**10.** The district court's calculation appeared as follows:

| Attorney | Hours | Rate/Hour | Total |
|---|---|---|---|
| Robert Kivo | 87.00 | $175 | $ 15,225.00 |
| Marion Yagman | 317.00 | 1755 | 55,475.00 |
| Stephen Yagman | 18.25 | 200 | 3,650.00 |
| | 554.00 | 225 | 124,650.00 |
| Linda Hirsch | 20.00 | 75 | 1,500.00 |
| | TOTAL | | 200,500.00 |
| Reduction for limited Success | | | x .75 |
| | TOTAL | | $150,375.00 |
| | Expenses | | 1,909.75 |
| | GRAND TOTAL | | $152,284.75 |

According to the analysis established in the text, the attorneys' fee award should have been calculated as follows:

| Attorney | Hours | x .75 Reduction | Rate/Hour | Total |
|---|---|---|---|---|
| Robert Kivo | 87.00 | 65.2500 | $175 | $ 11,418.75 |
| Marion Yagman | 317.00 | 237.7500 | 175 | 41,606.25 |
| Stephen Yagman | 18.25 | 13.6875 | 200 | 2,737.50 |
| | 554.00 | 415.5000 | 225 | 93,487.50 |
| Linda Hirsch | 20.00 | 15.0000 | 75 | 1,125.00 |
| | | TOTAL | | 150,375.00 |
| | | Expenses | | 1,909.75 |
| | | GRAND TOTAL | | $152,284.75 |

As is evident, the difference between the two calculations matters only in form and not in

461 U.S. at 435, 103 S.Ct. at 1940. The district court here determined that plaintiff's "unsuccessful claims ... against the twenty or so individual officers ... all arose out of a common core of facts and were based on related legal theories." Obviously plaintiff's claims against the individual defendants were premised on the same set of circumstances governing plaintiff's claims against the County and Black: the inadequate psychiatric care leading to her son's suicide. We therefore hold that the district court did not abuse its discretion in ruling that plaintiff's claims were related. *Cf. City of Riverside v. Rivera,* 477 U.S. 561, 577, 106 S.Ct. 2686, 2695, 91 L.Ed.2d 466 (1986) (trial court correctly ruled that civil rights claims asserted among various individuals and city were related), *aff'g* 763 F.2d 1580 (9th Cir.1985); *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940 ("Many civil rights cases will present only a single claim."); *Toussaint v. McCarthy,* 826 F.2d 901, 905 (9th Cir.1987) (claims challenging the constitutionality of conditions of confinement and procedures for placing prisoners in administrative segregation "involve a common core of facts and legal theories"); *Thorne,* 802 F.2d at 1142 (although the district court did not analyze the issue, it "reasonably may have concluded that the Title VII claim and the section 1983 claim arose in part out of a 'common core of facts' and that evidence that was material to one claim was material to the other").

After deciding that the claims were related, the district court then determined that "full compensation" would exaggerate

plaintiff's overall success because she ultimately prevailed only on her *Monell* claim that the County, through its policymaker Black, maintained a policy or custom of deliberate indifference to the psychiatric and medical needs of pre-trial detainees and the decedent. At the same time, Black was found liable only as the relevant policymaker responsible for the psychiatric understaffing and other conditions at the jail that led to the decedent's suicide. The individual defendants, on the other hand, could have been found individually liable to the plaintiff for their own deliberate indifference to the decedent's medical and psychiatric needs, yet the various claims against them were dismissed either prior to trial or on a motion for directed verdict made during trial. Like the district court, we believe that the plaintiff's "overall relief" was materially diminished by her failure to make out these claims against the individual defendants.[11] Therefore, we find that the district court did not abuse its discretion by reducing the attorneys' fee award by 25% to reflect this limited success. Neither do we find that the district court abused its discretion by not reducing the fees by an additional 25% as requested by the defendants.

## B. *Expert Witness Fees.*

The plaintiff also claims error in the trial court's denial of her application for $33,000 in expert witness fees. The trial court held that the plaintiff had failed to provide a declaration as required by a local court rule that the costs were "accurate, necessary and actually incurred."

substance.

11. Plaintiff relies on *Cobb v. Miller,* 818 F.2d 1227 (5th Cir.1987), and *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1982), to support her argument that the district court abused its discretion in reducing her attorneys' fee award to reflect limited success of related claims. Like the district court here, both *Mary Beth G.* and *Cobb* concluded that the claims on which the plaintiffs succeeded were related to the claims on which the plaintiffs failed to succeed. *See, e.g., id.* at 1280 ("an unsuccessful claim will be *un*related to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of

conduct that gave rise to the injury on which the relief granted is premised" (emphasis in original)). Unlike *Mary Beth G.* and *Cobb,* however, we read *Hensley* as requiring a reduction for limited success even if the claims are related. Thus, we cannot agree with the Court of Appeals for the Seventh Circuit's conclusion that "[b]ecause *Hensley* only disapproves of awarding attorney's fees for time spent on unsuccessful claims for relief that are *un*related to successful claims, ... time spent on unsuccessful, *related* claims *may* be compensated." *Id.* at 1279 (emphasis in original). For this reason, plaintiff's reliance on the *Mary Beth G.* and *Cobb* decisions is misguided.

Also, the court found that the plaintiff had failed to provide adequate documentation to assess the reasonableness of the claimed amounts. We hold that the court's denial of these fees on these grounds was not an abuse of discretion.

## VI. *Fees on Appeal.*

██ Under 42 U.S.C. § 1988, the plaintiff requests fees for this appeal. She is entitled to fees on the appeal because she was a "prevailing party" in the underlying litigation. *Greater L.A. Council,* 813 F.2d at 223. Given our affirmance of the district court's reduction of attorneys' fees, however, the plaintiff's success on appeal is only partial. The plaintiff's cross-appeal on the attorneys' fees issue is a separable and divisible claim from her defense of the appellants' appeal in the underlying suit. *Cf. id.* Therefore, the plaintiff is entitled to full fees for time reasonably spent on the defense of the jury verdict. The plaintiff is entitled to no fees for work spent on her unsuccessful appeal of the district court's reduction of attorneys' fees. Pursuant to Ninth Circuit Rule 39–1.6, the plaintiff will file an itemized proposal of rates and hours worked within thirty days of the filing of this opinion. We will then fix the amount of fees by separate order.

## CONCLUSION

For the foregoing reasons, we AFFIRM the jury verdict and the district court's denial of the appellants' motion for summary judgment. We also affirm the district court's 25% attorneys' fees reduction and its refusal to award the enhanced expert witness fees to the plaintiff.

AFFIRMED.