Richard WORTHINGTON, Plaintiff,

v.

Dave WILSON and Jeff Wall, Defendants.

No. 91–1047.

United States District Court, C.D. Illinois, Peoria Division.

April 27, 1992.

Gary Morris, Peoria, Ill., for plaintiff.

Jeanne L. Wysocki, Peoria, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

MIHM, Chief Judge.

Before the court are the Defendants' motion to dismiss or for more definite statement, the Defendants' motion to strike, and the Defendants' motion for sanctions. For the reasons set forth below, the motion to dismiss (# 16–1) is granted, the motion for more definite statement (# 16–2) is moot, the motion to strike (# 28) is moot, and the motion for sanctions (# 9) is denied.

## BACKGROUND

According to the amended complaint, the Plaintiff Richard Worthington ("Worthington") was arrested on February 25, 1989 by two police officers in the Peoria Heights Police Department. At the time of his arrest, Worthington was nursing an injured left hand and so advised the arresting officer. The officer responded by grabbing and twisting Worthington's injured hand and wrist, which prompted Worthington to shove the officer away and tell him to "take it easy." A second officer arrived on the scene and the two officers wrestled Worthington to the ground and handcuffed him. The officers then hoisted Worthington from the ground by the handcuffs, which caused him to suffer broken bones in

his left hand. These allegations are taken as true by this court for purposes of the pending motions.

Exactly two years later, on February 25, 1991, Worthington, by his attorney Gary Morris, filed a complaint in the Circuit Court of Peoria County against the Village of Peoria Heights and "three unknown named police officers." This complaint recited the facts above and claimed that the officers' actions deprived Worthington of his constitutional rights in violation of the Civil Rights Act of 1964, 42 U.S.C. § 1983. This complaint was divided into five counts. The first three name the officers jointly and severally, and claim a variety of damages. The fourth and fifth counts name the Village, and claim that it was also responsible for the officers' conduct under the doctrine of respondeat superior. The Village removed the action to this court and moved to dismiss the claims against it on the grounds that respondeat superior is not a valid basis for municipal liability under § 1983.

The motion was set for hearing before Magistrate Judge Robert J. Kauffman on May 2, 1991. Worthington did not respond to the motion to dismiss before that date, but on the date of the hearing he voluntarily dismissed the counts against the Village. Oddly enough, three weeks later, on May 23, 1991, Mr. Morris filed a response to the Village's motion to dismiss, which had already been disposed of when Worthington voluntarily dismissed the claims against the Village. In this response, Mr. Morris confessed that the reliance upon the theory of respondeat superior in the complaint was an oversight, but stressed that there was a valid basis for the § 1983 claims against the officers. On June 4, 1991, the Village of Peoria Heights filed a motion to strike this response as improper since the motion to dismiss was no longer pending. This motion to strike was later granted by the Magistrate. The Village also moved for sanctions against Worthington and Mr. Morris for having filed a baseless action against it. This motion remains pending.

On June 17, 1991, Worthington filed an amended complaint which named as Defendants Dave Wilson and Jeff Wall ("the Defendants"), the two officers who arrested Worthington on February 25, 1989. This amended complaint contains no claim against the Village of Peoria Heights. These Defendants, represented by Jeanne Wysocki (the same attorney who represented the Village), moved to dismiss the amended complaint on the grounds that the statute of limitations had run and that the complaint failed to state a proper claim under § 1983. Worthington responded to this motion and a hearing was held before the Magistrate on October 31, 1991. On December 19, 1991, the Magistrate issued a recommendation that both the motion to dismiss and the motion for sanctions be allowed. Worthington filed an objection to this recommendation, to which the Defendants in turn responded. The Defendants also filed a motion to strike an affidavit included in Worthington's response to the motion to dismiss. This motion also remains pending. On March 17, 1992, this court held an additional hearing on the pending motions.

## DISCUSSION

### I. *Statute of Limitations/Relation Back*

In their motion to dismiss, the Defendants first argue that the amended complaint against them must be dismissed because the statute of limitations has run. The Defendants note that the statute of limitations for § 1983 cases in Illinois is two years, and that the amended complaint was not filed until about four months after this period had expired. Moreover, the Defendants argue that the amended complaint cannot be deemed to relate back to the filing date of the original complaint because the prerequisites of relation back under Federal Rule of Civil Procedure 15(c) have not all been met. Specifically, the Defendants argue that they did not have notice of the action before the statute of limitations period had run as required by *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), and that

the renaming of fictitious parties does not constitute a "mistake" under Rule 15(c).

Worthington's primary argument in response is that relation back of his amended complaint is not governed by Rule 15(c), but rather by certain provisions in the Illinois Code of Civil Procedure, namely Ill. Rev.Stat. ch. 110, ¶¶ 2–407 and 2–413. Worthington argues that, under these provisions, his amended complaint is properly deemed to relate back to the February 25, 1991 filing of the original complaint. In the alternative, Worthington suggests that the requirements of Rule 15(c) have been met. Finally, Worthington argues that, whatever rules govern the situation, he should not be punished for omitting the arresting officers' names from the original complaint because the Peoria Heights Police Department had withheld that information from him.

In his recommendation, the Magistrate agreed with the Defendants that, under Rule 15(c) and *Schiavone*, the amended complaint naming the officers could only relate back if the officers were actually aware of the action before the limitations period expired on February 25, 1991. Since the record demonstrated that the Village was not even served until February 28, 1991, the Magistrate concluded that the Defendants did not have actual knowledge of the action on February 25, 1991 and that the amended complaint should therefore be dismissed as untimely filed. This court now addresses the parties' arguments in turn.

### A. *Schiavone Notice Requirements*

As an initial matter, there is no doubt that the statute of limitations for a § 1983 action in Illinois is two years. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Kalimara v. Department of Corrections*, 879 F.2d 276 (7th Cir.1989). Therefore, as noted by the Magistrate, Worthington's action against the Defendants must have been filed by February 25, 1991. Since the amended complaint was not filed until June 17, 1991, the only way the amended complaint can be found to be timely filed is if it relates back to the

filing of the original complaint. Relation back of amendments under federal rules is covered by Rule 15(c).

The Defendants' first argument is that Rule 15(c), as interpreted by *Schiavone*, requires that the party to be brought in by amendment receives notice of the action before the expiration of the statute of limitations period. The Defendants argue that because they did not receive notice of this action within this time, the amended complaint does not relate back and is therefore untimely. Because this court finds that *Schiavone* no longer controls, it rejects the Defendants' first argument.

Until December 1, 1991, Rule 15(c) provided, in relevant part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

In *Schiavone*, the Supreme Court interpreted this provision to require that, in addition to the amended complaint arising out of the same conduct set forth in the original complaint, the new party must have received actual notice of the action (and that it was the proper party) before the statute of limitations period expired. 477 U.S. at 30–31, 106 S.Ct. at 2385. As noted by the Magistrate and counsel for the Defendants, it appears that the Defendants did not receive notice of this action against them by February 25, 1991. Thus, under the old version of Rule 15(c) and *Schiavone*, the amended complaint against the officers

would not relate back and would thus be untimely filed.

However, as of December 1, 1991, Rule 15(c) reads differently. As will be seen momentarily, the amendment was designed to change the requirement of *Schiavone* that the new party receives notice of the action before the expiration of the limitations period. As amended on December 1, 1991, Rule 15(c) reads, in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when:
>
> . . . . .
>
> (2) The claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

[1] As noted by the Advisory Committee on the Federal Rules, this amendment was designed to change the result dictated by *Schiavone*.

> Paragraph (c)(3). This paragraph has been revised to change the result in *Schiavone v. Fortune, supra,* with respect to the problem of a misnamed defendant. An intended defendant who is notified of an action within the period allowed by Rule 4(m) [apparently intending to mean Rule 4(j)] for service of a summons and complaint may not under the revised rule defeat the action on account of a defect in the pleading with respect to the defendants named, provided that the requirements of clauses (A) and (B) have been met. If the notice requirement is met within the Rule 4(m) period, a complaint may be amended at any time to correct a formal defect such as misnomer or misidentification. On the basis of the text of the former rule, the Court reached a result in *Schiavone v. Fortune* that was inconsistent with the liberal pleading practices secured by Rule 8.
>
> In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule, as may be granted, or example, if the defendant is a fugitive from service of the summons.

(Citations omitted). Thus, relation-back is now governed by a modified standard. An amended complaint which changes the name of the defendant will relate back to the filing of the original complaint if it arises out of the same conduct contained in the original complaint and the new party was aware of the action within 120 days of the filing of the original complaint.

■ Thus, under the amended version of Rule 15(c), Worthington's amended complaint, which arises out of the very same conduct in its original complaint, would relate back to February 25, 1991 if the Defendants were aware, before June 25, 1991, that they were the officers referred to as "unknown named police officers" in the original complaint. At oral argument on March 12, 1992, counsel for the Defendants conceded that they were aware of the pendency of the action within this period; thus, under the new version of Rule 15(c), the amended complaint would be timely because the Defendants received notice of the action within 120 days of the original filing. Given that the two versions of Rule 15(c) dictate opposite results on this issue in this case, the question becomes which version governs here. The answer is that the new version applies.

In its order of April 30, 1991, which adopts all of the 1991 amendments to the

Federal Rules of Civil Procedure, the Supreme Court states:

> [T]he foregoing additions to and changes in the Federal Rules of Civil Procedure ... shall take effect on December 1, 1991, and shall govern all proceedings in civil actions thereafter commenced *and, insofar as just and practicable, all proceedings in civil actions then pending.*

(Emphasis added). Thus, the new version of Rule 15(c) applies to this action if such application is "just and practicable." This court is of the opinion that it is just to apply the new version of Rule 15(c) which saves Worthington's claim. As noted in the Committee notes to Rule 15(c) reprinted above, Rule 8 secures liberal pleading practices in federal court. The revision of Rule 15(c) makes clear that the Supreme Court had created too restrictive a requirement in *Schiavone* and that the true intent of Rule 15(c) was to allow the amended pleading in cases such as this. Thus, justice dictates that the amended complaint be governed by the new, more relaxed version of Rule 15(c). Moreover, it is "practicable" to apply the amended version of Rule 15(c). Black's Law Dictionary defines "practicable" as "that which may be done, practiced, or accomplished; that which is performable, feasible, or possible." Certainly it is feasible or possible to apply the newer version of Rule 15(c) to this case—there is nothing about the amended version of Rule 15(c) which makes it impossible to apply it to this case.

Accordingly, this court rejects the Defendants' argument and the Magistrate's recommendation that *Schiavone* prohibits relation back of this amended complaint. Rule 15(c) no longer requires that the party to be brought in by amendment receives notice of the action prior to the expiration of the statute of limitations period.

## B. *"Mistake"*

The Defendants also argue that relation back is not permitted here under Rule 15(c) because there was no "mistake" concerning the identity of the proper party. In this regard, Rule 15(c) states that an amendment changing the naming of a party will relate back if, among other things, the party brought in by the amendment "knew or should have known that, but for a *mistake* concerning the identity of the proper party, the action would have been brought against the party." (Emphasis added). Both the old version and the new version of Rule 15(c) contain this identical language.

The Defendants argue that the failure of the original complaint to name Wilson and Wall was not due to a "mistake" but rather was due to a lack of knowledge over the proper defendant. The Defendants argue that while Rule 15(c) permits amendments which change a mistaken name in the original complaint, it does not permit a plaintiff to replace "unknown" parties with actual parties. In support of this argument, the Defendants cite *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir.1980) and *Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175, 1181 (7th Cir.1989). These cases reflect the Seventh Circuit's view that an amended complaint which replaces fictitious names with actual names due to an initial lack of knowledge concerning the proper defendant does not involve a "mistake" and is therefore not entitled to relation back under Rule 15(c). *See also Norton v. International Harvester Co.*, 627 F.2d 18, 22 (7th Cir.1980). *But see Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir.1978). These holdings would seem to control in this case, since Worthington concedes that he designated the Defendants as "unknown named police officers" in the original complaint because he was unaware of their identities at that time. Moreover, the recent amendment of Rule 15(c) would not seem to undercut the applicability of these holdings, since the language concerning mistake is identical in both versions. Accordingly, the court finds that, pursuant to the Seventh Circuit authority noted above, Worthington's amended complaint is not entitled to relation back.

However, this court will take this opportunity to respectfully express its disagreement with the above-noted Seventh Circuit decisions. First of all, this court is of the opinion that the "mistake" language in Rule 15(c) does not create a new, separate

prerequisite for relation back, but rather merely refers back to the first portion of Rule 15(c)(3). The word "mistake" appears to this court to be a way of referencing, in one word, the phrase "change the party or the naming of the party" at the beginning of the subsection.

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake [meaning the changing of the party or the naming of the party] concerning the identity of the proper party, the action would have been brought against the party.

Read this way, the word mistake would not create an additional prerequisite for relation-back. The requirements for relation-back would only be three:

> (1) the amendment changes the party or the naming of the party;
>
> (2) the defendant received notice of the action within the service of process period; and
>
> (3) the defendant knew that it was the party being sued.

The above is an explanation of *how* Rule 15(c)(3) can be rationally interpreted, under its existing language, as not having a separate "mistake" requirement. The more interesting question to be addressed now is *why* such a "mistake" requirement should not be included. It must be questioned whether a fourth requirement of "mistake" logically fits in with the other three requirements listed above. Those first three requirements in essence demand that the party being brought in had *notice*—that he knew about the action and knew that he was the one intended to be sued. The focus is on the awareness of the party to be brought in, out of concern for due process. A separate "mistake" requirement improperly shifts the focus to the state of mind of the plaintiff bringing the action—whether the plaintiff named the wrong defendant out of a mistake or because he did not have enough information to identify the proper defendant at all. Such an analysis is irrelevant in this court's view. The heart of Rule 15(c) is notice to the defendant. *See generally* 6A Wright & Miller, *Federal Practice and Procedure*, § 1498. The mistake requirement does nothing to further this controlling interest.

Indeed, it can plausibly be argued that a mistake requirement would actually hinder the important interest of notice to the Defendant. As is true in this case, a complaint which does not attempt to specifically identify the proper defendants leaves open the possibility that the eventual defendants are the ones being sued. If the original complaint comes to the attention of those defendants (as it did here) and the complaint uses "John Doe" or "unknown," the defendants will be on notice that they are being sued if the content of that complaint implicates them. Contrast that with the situation where the complaint actually names defendants, but names the wrong ones. Had Worthington simply randomly chosen the names of two officers in the department, the Defendants Wilson and Wall might have been lulled into the belief that they were not being sued. As a result, a separate "mistake" requirement could be detrimental to the true purpose of Rule 15(c) and should not be included in the analysis. Having said all of this, this court recognizes that it is duty bound to follow Seventh Circuit precedent on point, and accordingly reaches the result dictated by *Wood*.

Accordingly, this court finds that Worthington's amended complaint does not relate back under Rule 15(c) because the amendment did not correct a "mistake," but rather corrected a lack of knowledge at the time of the original complaint.

## C. *State Law*

This brings us to Worthington's only real argument in support of relation-back. Worthington asserts that the issue of relation-back in this case is not governed

by Rule 15(c), but rather is governed by § 2–413 of the Illinois Code of Civil Procedure. That section provides, in relevant part:

> Unknown Parties. If in any action there are persons interested therein whose names are unknown, it shall be lawful to make them parties to the action by the name and description of unknown owners, or unknown heirs or legatees of any deceased person, who may have been interested in the subject matter of the action previous to his or her death; but an affidavit shall be filed by the party desiring to make those persons parties stating that their names are unknown. Process may then issue and publication may be had against those persons by the name and description so given, and judgments entered in respect to them shall be of the same effect as though they had been designed by their proper names.

Worthington suggests that this provision would allow the amended complaint to relate back because his inability to discover the names of the arresting officers was not for want of due diligence. This court need not address the question of whether Worthington's efforts would satisfy § 2–413, because it now finds this provision to be inapplicable in this action.[1]

In support of the notion that an Illinois procedural rule would govern the issue of relation back in this action, Worthington cites *Cabrales v. County of Los Angeles*, 644 F.Supp. 1352 (C.D.Cal.1986), which held that relation-back of an amendment which added a new party was an issue governed by state law. 644 F.Supp. at 1360. Per-

haps even more important is the Ninth Circuit's decision on the appeal of this case. *Cabrales v. County of Los Angeles*, 864 F.2d 1454 (9th Cir.1988). In affirming the trial court's decision, the Ninth Circuit stated:

> As the *Wilson* Court stated, "the length of the limitations period, and closely related questions of *tolling and application*, are to be governed by state law." The California relation back doctrine is such a tolling issue that, under *Wilson*, must be decided under state law. Also, as the district court noted, statutes of limitation define the substantive rights of parties. The California pleading practice allows new defendants to be named after the original complaint is filed without violating the statute of limitations is such a substantive state policy that it is applicable in the federal courts.

864 F.2d at 1463–64. The decision rests on the principle that, because federal courts borrow state statutes of limitation for § 1983 claims, they must also borrow state rules of procedure which increase or decrease those statutes of limitations, such as tolling or relation-back.

This decision seems to be at odds with Seventh Circuit authority.[2] In *Lewellen v. Morley*, 875 F.2d 118 (7th Cir.1989), Judge Easterbrook agreed with the Ninth Circuit's general proposition that "[w]hen state law supplies the period of limitations, it also supplies associated tolling and extension rules." 875 F.2d at 120. However, after noting that state law rules which affect the period of limitations are often part of the state law which a federal court

---

1. As an aside, it appears that Worthington has not satisfied the requirements of § 2–413, which allows for service by publication of certain unknown defendants. That section requires the party to file an affidavit, prior to service of process, which states that the names of the potential parties are unknown. Those parties are then served by publication. Worthington did not follow such a procedure in this case.

2. Moreover, the decision seems to represent an extension of law on this topic. Courts have struggled with the issue of the applicability of state relation back doctrines in the context of diversity cases, presumably because of the elusive substance/procedure distinction. *See gen-*

*erally* Wright & Miller, *Federal Practice and Procedure*, Vol. 6A, § 1503. But in federal question cases, the issue is much simpler—federal law controls. The only exception to this is that state law at times provides the statute of limitations, as is true in § 1983 cases. Thus, while this court borrows § 13–202 (and presumably state rules which are inextricably entwined with the statute of limitations) from Illinois for § 1983 cases, it does not borrow any and all state procedural rules which may have some impact on the limitations period, particularly where there is a federal rule of procedure directly on point. *See Lewellen v. Morley*, 875 F.2d 118, 121 (7th Cir.1989).

borrows for § 1983 cases, Judge Easterbrook noted a bright-line limitation on this principle: "[f]ederal courts absorb state law only when federal law neglects the topic." 875 F.2d at 121. In other words, even though a state rule may affect the state statute of limitations, a federal court in a civil rights case does not borrow that rule unless there is no similar federal provision. In this case, there is a federal rule (Rule 15(c)) which addresses the issue of relation-back of unknown named defendants addressed in § 2–413. That federal rule, as interpreted by the Seventh Circuit in *Wood,* provides that parties brought in by amendment whose identities were not known at the time of the original complaint were not added due to a "mistake" and therefore, the amended filing does not relate back. To the extent that § 2–413 would dictate a contrary result, it is at odds with federal law. As noted in *Lewellen,* when there is such a clash between state and federal rules, "[f]ederal law wins these contests every time." 875 F.2d at 121.

## II. Failure to State Proper § 1983 Claim

The Defendants also move for dismissal of the amended complaint on the grounds that it fails to state a proper § 1983 claim. The Defendants argue that the amended complaint, which states that the officers' excessive force violated Worthington's Eighth and Fourteenth Amendment rights, does not designate the appropriate constitutional provision for a case of excessive force used during arrest. The Defendants suggest that the appropriate constitutional provision to claim under the facts alleged in the complaint is the Fourth Amendment. In light of this court's ruling on the statute of limitations issue, it need not address this question.

## III. More Definite Statement

Because this court has granted the Defendants' motion to dismiss the amended complaint, their alternative motion for a more definite statement in the amended complaint is moot.

## IV. Motion to Strike

Similarly, the Defendants' motion to strike the affidavits filed on March 26, 1992 in support of Worthington's opposition to the motion to dismiss, is moot. This court has granted the Defendants' motion to dismiss and rejected Worthington's argument that Illinois procedure should be consulted on the issue of relation back. Since the affidavits submitted are designed to support his argument for relation-back under § 2–413, they were not considered by the court and need not be stricken.

## V. Sanctions

Shortly after Worthington voluntarily dismissed the claims against the Village of Peoria Heights found in the original complaint, the Village filed a motion for sanctions against Worthington or his attorney. In that motion, the Village argues that Worthington's attempt to state a § 1983 claim against it on the basis of respondeat superior was contrary to clear legal authority and therefore in violation of Rule 11. The Village notes that the Supreme Court held 14 years ago, in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that respondeat superior is not a valid basis for municipal liability under § 1983, and that cases since then have uniformly applied this principle. The Village also argues that the fact that Worthington voluntarily dismissed his claim against the Village in response to the motion to dismiss is a clear indication that this claim had no basis in law.

In his response to this motion, Worthington concedes that respondeat superior is an invalid basis for municipal liability under § 1983. However, Worthington argues that Rule 11 sanctions are inappropriate because the inclusion of the respondeat superior theory in his first complaint was not due to an inadequate pre-filing inquiry, but rather due to a clerical oversight. Worthington's attorney argues in the response that his handwritten drafts of the complaint included the necessary "custom or policy" language for municipal liability, and that he had fully intended to include

this language in the complaint submitted to the court. However, according to Mr. Morris, such language was ultimately omitted from the complaint because an assistant in his office used a form complaint on his word processor without substituting the "custom or policy" language for the "respondeat superior" language. Mr. Morris suggests that this is an innocent mistake and that Rule 11 sanctions would be inappropriate. Worthington also argues that the fact that he voluntarily dismissed the claim against the Village should not be construed as a concession that he had no viable case against the Village. Worthington explains that he contemplated suing the Village for custom or policy, but later dropped the notion because he decided it would be too difficult to prove.

Rule 11 states, in relevant part, that "[t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading...." Thus, if, as he claims, Mr. Morris had intended all along to sue the Village under "custom or policy" and the inclusion of the "respondeat superior" language was simply a clerical error by an assistant, he would have detected as much when he read the hard copy of the complaint. The fact that the "respondeat superior" language still appeared in the complaint submitted leads to but one conclusion: that Mr. Morris did not read, or at least carefully read, the complaint he signed. This would constitute a violation of Rule 11, even if the mistake was an "innocent" one.

However, this court is without power to sanction Mr. Morris's conduct in this instance. While Rule 11 would authorize sanctions for such a filing in this court, it does not authorize sanctions for a pleading initially filed in state court which is later removed to federal court. *See Schoenberger v. Oselka,* 909 F.2d 1086, 1087 (7th Cir.1990); *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1200–01 (7th Cir.1990). The first complaint, which contained the reference to respondeat superior, was filed in Peoria County Circuit Court and is therefore outside the reach of this court's sanction power under Rule 11. The amended complaint, which was filed in this court, contained no reference to respondeat superior. The Defendants' motion for sanctions is accordingly denied.

CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss (# 16–1) is GRANTED, the Defendants' motion for a more definite statement (# 16–2) is MOOT, the Defendants' motion to strike (# 28) is MOOT, and the Defendants' motion for sanctions (# 9) is DENIED. The Clerk is instructed to enter final judgment in favor of the Defendants and against the Plaintiff.